57 F.3d 1067
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lori Lynn WALTON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Harry Robert WALTON, Defendant-Appellant.
 Nos. 94-5516, 94-5517.
 United States Court of Appeals, Fourth Circuit.
 Submitted: April 28, 1995.
Decided: June 14, 1995.
 
 William R. Metzner, Sr., Wheeling, WV; John J. Pizzuti, CAMILLETTI, SACCO & PIZZUTI, Wheeling, WV, for Appellants.
 William D. Wilmoth, United States Attorney, Sam G. Nazzaro, Assistant United States Attorney, Wheeling, WV, for Appellee.
 Before WILKINS, WILLIAMS, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Lori Walton appeals the 18-month sentence she received on her guilty plea to destruction or removal of property to prevent seizure (18 U.S.C.A. Sec. 2232(a) (West Supp.1994)). Harry Walton appeals the 37-month sentence imposed on him after his guilty plea to aiding and abetting the possession of 160 pounds (72.5 kilograms) of marijuana with intent to distribute within 1000 feet of a school (21 U.S.C.A. Sec. 860 (West Supp.1994)). Lori Walton contends that the district court misapplied guideline sections 2J1.2 and 2X3.1[1] by finding that the investigation she obstructed was the investigation of a marijuana conspiracy run by Eric Walton, Lori's husband and Harry's brother. Harry Walton argues that the district court clearly erred in finding that he had more than a minimal role in the offense. We affirm.
 
 I.
 
 2
 Between 1991 and 1993, Eric Walton (Lori's husband and Harry's brother) imported approximately 650 pounds of marijuana to West Virginia from California, Texas, and Mexico. Initially, Harry ("Deke") Walton assisted Eric Walton's marijuana business by distributing marijuana to Sid Baker in West Virginia and Ohio. For some reason, Harry Walton was less active in Eric Walton's operation after 1991.[2] However, Eric Walton titled a car he bought with drug proceeds in Harry Walton's name, and Harry made payments to Sid Baker after Baker's arrest, apparently to encourage him not to cooperate with law enforcement authorities.
 
 
 3
 On November 4, 1993, Eric Walton received a shipment of 160 pounds of compressed marijuana from Texas. A seven pound sample was delivered to his house the night before, and the next morning the rest of the marijuana was delivered to a large garage which he owned, and which was near his home. The garage was within 1000 feet of a school. Eric Walton owned a video store in the same area. He went there to get the key to the garage from Harry Walton. Harry returned to the garage with Eric and remained there while a rental car containing the marijuana was backed into the garage. Harry warned Eric that the garage might be under surveillance, as in fact it was. Both Eric and Harry Walton were arrested outside the garage, and two co-defendants who were in the garage unloading the marijuana were also arrested.
 
 
 4
 While a search warrant was being obtained for the garage and Eric Walton's house, agents went to the house. When Lori Walton came outside, the agents told her that Eric Walton had been arrested, and that she would not be allowed to go back inside. She left, but returned two hours later. Two different agents were in a car awaiting the search warrant. Lori Walton went into the house through the back door and locked the door.
 
 
 5
 Shortly afterward, the first two agents returned. They learned that Lori Walton had reentered the house, and then, that a search had been authorized. The agents made a forced entry into the house and found a 7-pound block of compressed marijuana with a knife stuck in it in a room downstairs. They also found that Lori Walton had attempted to flush an undetermined amount of marijuana down the toilet in the upstairs bathroom. The toilet was stopped up and the agents recovered "two handfuls" of marijuana from the toilet.
 
 
 6
 Lori Walton attempted to suppress the marijuana seized in the house. During the suppression hearing, she testified that she had tried to dispose of a sandwich bag full of her own personal supply of locally-grown marijuana. However, one of the agents testified that, while Lori Walton was waiting for the search to be completed, she was asked how much marijuana she had flushed down the toilet. According to the agent, Lori Walton held up a gallon-size baggie and said that the reason she did it was because she knew Eric was in trouble and she was trying to help him out.
 
 
 7
 The suppression motion was denied, and Lori Walton pled guilty to destruction or removal of property to prevent its seizure. Harry Walton pled guilty to aiding and abetting the possession of marijuana with intent to distribute within 1000 feet of a school.
 
 II.
 
 8
 The sentencing guideline applicable to Lori's offense was section 2J1.2 (Obstruction of Justice). The district court applied the cross-reference in subsection (c), which provides that, if the offense involved obstructing the investigation of a criminal offense, guideline section 2X3.1 (Accessory After the Fact) should be applied "in respect to that criminal offense" if it results in a higher offense level. Section 2X3.1 does not apply if the defendant has acted to protect himself rather than another person. United States v. Pierson, 946 F.2d 1044, 1048-49 (4th Cir.1991).
 
 
 9
 Guideline section 2X3.1 directs that the base offense level should be the offense level for "the underlying offense," reduced by 6 levels. The district court held that the underlying offense was conspiracy to distribute marijuana and included aiding and abetting in the possession with intent to distribute of 160 pounds of marijuana within 1000 feet of a school
 
 
 10
 Lori argues on appeal that the underlying offense which she was attempting to obstruct was the investigation of her own personal supply of marijuana, which she attempted to destroy. She contends that the district court misapplied the guidelines by failing to take into account that neither the 160 pounds of marijuana nor the 7 pounds of compressed marijuana in the house were known to her or reasonably foreseeable to her. Her argument thus boils down to a disagreement with the district court's factual finding that the blocks of marijuana in the garage and in the house were known to her or reasonably foreseeable to her.
 
 
 11
 The court's determination that she did know about, or could reasonably foresee, the 160 pounds of marijuana and was attempting to obstruct the investigation of Eric's activities is a factual finding which is reviewed for clear error. United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir.1989). At Lori's sentencing hearing, the government summarized the evidence of her involvement in Eric's drug activities which was presented at Eric's trial, as follows. Before Sid Baker's arrest, his girlfriend regularly made payments for marijuana to Lori at Eric's video store. After Baker's arrest, his girlfriend relayed his requests for money to Lori. In addition, Lori had a number of telephone conversations with one of Eric's sources in California. Given the evidence of her close association with Eric Walton and her prior involvement in his marijuana operation, the district court did not clearly err in finding that Lori was attempting to obstruct the investigation of Eric's conspiracy and, in particular, his receipt of the 160 pounds of marijuana.
 
 III.
 
 12
 Harry Walton maintains that he was entitled to a 4-level adjustment for having a minimal role in the offense to which he pled guilty, namely, assisting Eric Walton in the receipt of 160 pounds of marijuana on November 4, 1993.
 
 
 13
 The commentary to guideline section 3B1.2 defines a minimal participant as one who "is plainly among the least culpable of those involved in the conduct of a group." A defendant's "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative" that he had a minimal role.
 
 
 14
 USSG Sec. 3B1.2, comment. (n.1). A minor participant is one who is "less culpable than most other participants, but whose role could not be described as minimal." USSG Sec. 3B1.2, comment. (n.2).
 
 
 15
 Adjustments are determined on the basis of all relevant conduct. USSG Sec. 1B1.3(a). For drug offenses, relevant conduct includes all acts which were part of the same course of conduct or common scheme or plan as the offense of conviction. USSG Sec. 1B1.3(a)(2). Eric Walton's possession of 160 pounds of marijuana on November 4, 1993, was part of a continuing conspiracy in which Harry Walton had played a substantial role in the recent past. Harry did not present any evidence that he was unaware of the scale of his brother's enterprise at the time of his arrest. See United States v. Urrego-Linares, 879 F.2d 1234, 1239 (4th Cir.) (defendant seeking mitigating adjustment has burden of proving that it applies in his case), cert. denied, 493 U.S. 943 (1989). Therefore, the district court did not clearly err in finding that Harry had more than a minimal role.
 
 
 16
 We therefore affirm the sentences imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 United States Sentencing Commission, Guidelines Manual (Nov.1993)
 
 
 [2]
 Sid Baker testified at Eric's trial that Harry Walton had a nervous breakdown in 1991. Harry's presentence report describes several hospitalizations for problems resulting from his drug and alcohol abuse, but does not mention any breakdown in 1991